IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| CAROLYN C. JETER, | ) | C.A. No. 3:11-CV-627-CMC |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | ON MOTION TO DISMISS |
| CENTURY 21 BOB CAPES REALTORS, INC., | ) | (Dkt. No. 12) |
| CENTURY 21 BOB CAPES REALTORS | ) | |
| COMMISSION ADVANTAGE PLAN, | ) | |
| FRONTIER TRUST COMPANY, FSB, and | ) | |
| COLDWELL BANKER, UNITED REALTORS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Through this action, Plaintiff, Carolyn C. Jeter ("Plaintiff"), seeks recovery of benefits allegedly owed under a deferred compensation plan known as the Century 21 Bob Capes Realtors Commission Advantage Plan ("the Plan"). The Plan was sponsored and administered by Century 21 Bob Capes Realtors, Inc. ("Bob Capes"). Both the Plan and Bob Capes are named as Defendants in this action. Plaintiff also names Coldwell Banker, United Realtors ("CBUR") as a Defendant based on allegations that CBRU is liable to the same extent as Bob Capes in light of a merger between the two entities in November 2008.[1]

The matter is before the court on CBUR's motion to dismiss. CBUR argues, first, that the allegations of a merger are not sufficiently specific to satisfy the relevant pleading standards. In addition, CBUR argues that the transaction in November 2008 was an asset sale rather than a merger, with assumption of only specified obligations exclusive of any obligations under the Plan. The second argument is supported by introduction of some but not all documents relevant to the

---

[1] In referring to CBUR, the court follows the lead of the parties. The court notes, nonetheless, that this party may be misnamed. *See* Dkt. No. 12-2 at 3 (indicating proper name is "SANDION, a Texas General Partnership").

transaction. CBUR argues that the court may consider these documents at the motion to dismiss stage because the complaint refers to and is dependent on the November 2008 transaction between Bob Capes and CBUR. CBUR also advances alternative arguments which are not dependent on the nature of the transaction.

For the reason set forth below, the court finds Plaintiff's factual allegation of a merger sufficient to survive a motion to dismiss, although amendment is necessary if Plaintiff intends to rely on any successor liability theory other than merger as a basis for holding CBUR liable. The court denies CBUR's motion in all other respects as the court finds the arguments either to be based on evidence not properly considered at this stage of the proceedings or on legal theories which are not clearly dispositive (in part because of an absence of binding precedent). Denial is without prejudice to review of the same issues on motion for summary judgment after an adequate period of time is allowed for discovery of information relevant to these issues.

## STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of her claims that entitles her to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, F.3d at 302). *See also Wolman v. Tose*, 467 F.2d 29, 33 n.5 (4th Cir. 1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present.").

Thus, in applying Rule 12(b)(6) the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of its claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003).

**BACKGROUND**

For purposes of this motion, it is undisputed that the Plan is a "top hat" plan which is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et. seq,* ("ERISA"). Although governed by ERISA, top hat plans are subject to limited requirements and remedies under that Act. Most critically for purposes of the present motion, top hat plans are not subject to the same fiduciary duty and funding requirements as other ERISA deferred compensation or retirement plans. *See generally* 29 U.S.C. § 1051(2) (covering unfunded plans maintained "primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees"); *In re IT Group, Inc.*, 448 F.3d. 661, 665 (3rd Cir. 2006) (noting, in addressing claims

in bankruptcy relating to a top hat plan, that, "when a plan is 'unfunded,' '[t]he employer promises to pay the employee the deferred compensation at a specified time, but does not set aside the funds in an escrow, trust fund, or otherwise. The assets used to pay the deferred compensation are the general assets of the employer and are subject to the claims of the employer's creditors.'"); *In re New Valley Corp.*, 89 F.3d 143, 148-49 (3rd Cir. 1996) (explaining that a top hat plan is "unfunded and is maintained . . . primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees" and is subject to "near-complete exemption . . . from ERISA's substantive requirements" including "ERISA's fiduciary responsibility provisions").

In her first cause of action, asserting an ERISA claim for benefits, Plaintiff alleges that she participated in the Plan as an employee or independent contractor of Bob Capes.[2] Dkt. No. 1 ¶ 11. She further alleges that agents of Bob Capes encouraged her to participate in the plan and to leave funds in the Plan when she retired, but failed to pay her the sums due upon request. *Id.* ¶¶ 12-20. More particularly, she alleges that, in the Spring of 2008, she requested distribution of her funds and was told that it would take a period of weeks to complete the distribution. *Id.* ¶ 20. Multiple subsequent requests were met with the same response until, in early 2009, she was told that no funds were available. *Id.* ¶¶ 21-22. Plaintiff further alleges that she accepted transfer of title of an

---

[2] In its reply, CBRU suggests Plaintiff's claim might be defective if she was, in fact, an independent contractor rather than an employee. Dkt. No. 25 at 13 (noting that ERISA only covers "employee" benefits and that "[i]ndependent contractors are not employees."). To the extent this is intended as an additional basis for dismissal of the ERISA claim, the court declines to consider it given that it was raised for the first time on reply. In any event, CBRU has failed to present authority in support of the premise that a person misled into participation in an ERISA Plan through deferral of income (either because the participant was not an employee or was not an appropriate participant in a top hat plan) is precluded from recovery of benefits (or, at least, return of deferred income) from the Plan.

4

insurance policy in partial satisfaction of the obligation in September 2010. She alleges that the amount still due is in excess of $300,000. *Id.* ¶¶ 24-26.

Plaintiff also includes a state law claim the critical allegations of which are as follows:

> 34.     On April 15, 2009 for valuable consideration James Derrick, acting on behalf of Defendant Bob Capes, executed and delivered a written promissory note to the Plaintiff ("the Note").
>
> 35.     That promissory note promised to pay $328,703.24 "in twelve months on April 15, 2010 . . . With interest thereon at the rate of 5.5%."
>
> 36.     Defendant Bob Capes has not paid the Note according to its terms.

*Id.* ¶¶ 34-36.

Plaintiff's sole reference to CBUR is found in her identification of the parties where she states as follows:

> Defendant Coldwell Banker, United Realtors is a Texas Corporation doing business in South Carolina. In November 2008 Coldwell Banker, United Realtors *merged* with Bob Capes, acquiring its assets and assuming its liabilities. For all purposes described herein, based on both contract and common law principles, Coldwell Banker, United Realtors is a successor-in-interest and liable for the debts and liabilities of Bob Capes to the Plaintiff.

*Id.* ¶ 5 (emphasis added).

Thus, Plaintiff's sole basis for inclusion of CBUR is a theory of successor liability *by virtue of a November 2008 merger* between CBUR and Bob Capes in November 2008. This alleged merger occurred after Plaintiff first requested a distribution of funds from the Plan (Spring of 2008) and prior to any of the following: (1) she was informed that no funds were available for distribution (early 2009), (2) she accepted a promissory note *from Bob Capes* promising to pay $328,703.24 (April 15, 2009), (3) the deadline for payment under the promissory note expired (April 15, 2010);

5

and (4) she accepted transfer of title to an insurance policy in partial satisfaction of "the obligation" (September 2010).[3]

## DISCUSSION

### I.    Adequacy of Factual Allegations of "Merger"

As noted above, Plaintiff's sole allegation specific to CBUR is that CBUR *merged* with Bob Capes in November 2008, "assuming its liabilities." If the factual allegation that there was such a merger proves correct, it follows as a matter of law that CBUR and Bob Capes became one and the same entity as of the date of the merger. Moreover, the allegation that liabilities were assumed is sufficiently specific to satisfy the relevant pleading standard.

CBUR points to evidence which draws Plaintiff's characterization of the transaction into doubt. The court does not, however, consider this evidence in determining the adequacy of Plaintiff's factual allegations which are sufficiently specific assuming Plaintiff relies *solely on a merger theory*. If Plaintiff relies on some theory of successor liability other than that Bob Capes and CBUR merged, then more detailed factual allegations would be required in support of the theory. At present, no such theory has been pleaded although it appears from Plaintiff's responsive memorandum that she may intend to rely heavily, if not solely, on a successor liability theory other than merger.[4]

---

[3] The allegation relating to transfer of title to the insurance policy is found under the first cause of action for payment of ERISA benefits. However, the timing of the transfer, September 2010, is after the April 2010 date set for payment under the April 2009 promissory note.

[4] The word "merger" appears in Plaintiff's opposition memorandum only once, and then in a quotation regarding potential bases for successor liability. In contrast, Plaintiff uses variations of the term "successor" (*e.g.*, successor, successor issue, successor liability, successor theory, successor corporation) approximately thirty times. Her arguments and concluding footnote also suggest that she is relying solely on successor liability theories other than "merger." *See* Dkt. No. 22 n.7 ("While

**II**.     **Asset Purchase and Sale Agreement**

CBUR offers substantial portions of an Asset Purchase and Sale Agreement which it maintains demonstrate, first, that the November 2008 transaction was not a merger and, second, that CBUR did not assume any liability under the Plan as a result of the November 2008 transaction. While the portions provided appear to support CBUR's position, they will not be considered here as this document was not attached to or specifically referenced in the complaint and Plaintiff challenges its completeness and authenticity. It follows that this document is not appropriate for consideration on a motion to dismiss for failure to state a claim.[5]

Even if the matter were before the court on motion for summary judgment, the court would defer ruling to afford  Plaintiff an opportunity for discovery as to the complete agreement and related dealings between CBUR and Bob Capes as they relate to the November 2008 transaction.

**III.**     **Other Successor Liability Theories**

As the parties note, the requirements for imposing successor liability are somewhat more lenient for purposes of imposing liability for violations of federal rights (such as those protected by

---

[CBUR] cites no case indicating that the factual predicates of the various successor liability [theories] must be pled, if the Court were to view the Complaint as needing more specific factual allegations in that regard, Plaintiff would seek leave to amend to include those facts."). Moreover, as she effectively concedes, liability under a successor liability theory other than merger is dependent on facts beyond the nature of the transaction. Dkt. No. 22 at 1 (asserting that resolution of the successor liability issue "involves a complex analysis of the statute, federal common law, and the language of the Plan").

[5] In its reply, CBUR concedes the court may not consider the proffered agreement in light of Plaintiff's challenge to its authenticity but argues the court may consider the agreement with respect to Plaintiff's motion to amend. Dkt. No. 25 at 6. CBUR then argues that Plaintiff should not be permitted to amend because she has failed to suggest facts supporting successor liability under a non-merger theory. There is, however, no motion to amend pending. Thus, the court does not know what facts Plaintiff might allege

ERISA) than for other obligations. *See* Dkt. No. 12-2 at 13 (discussing *Feinberg v. RM Acquisition, LLC,* 629 F.3d 671, 674 (7th Cir. 2011); Dkt. No. 22 at 5-6. As explained in *Feinberg*:

> [W]hen a claim arising from a violation of federal rights is involved, the courts allow the plaintiff to go against the purchaser of the violator's business even if it is a true sale . . . , provided that two conditions are satisfied. The first is that the successor had notice of the claim before acquisition. . . . The second condition is that there be substantial continuity in the operation of the business before and after the sale, and is satisfied if no major changes are made in that operation.

*Feinberg*, 629 F.3d at 674.

CBUR maintains that the more lenient standards for imposing successor liability with respect to an ERISA plan are inapplicable to a top hat plan because such a plan is unfunded. *See* Dkt. No. 12-2 at 12 (CBUR relying on *Feinberg*). Plaintiff maintains that the unfunded nature of a top hat plan makes it even more appropriate to impose successor liability as the Plan is unfunded and benefits must be paid from the employer's general assets. Dkt. No. 22 at 11-12. The law cited by the parties in support of their positions is both limited and inconclusive.

The court will enter this thicket if and when the issues are properly raised and adequately developed from both a factual and legal standpoint. It would not, however, be appropriate to do so at this stage as the present complaint does not advance any successor liability theory other than merger. Neither will the court foreclose the possibility that Plaintiff might plead a viable successor liability theory if she seeks to amend.

**IV**.    **Liability on Promissory Note**

CBUR argues that it should not be considered a Defendant with respect to the second cause of action because (1) it is not specifically named under this claim and (2) the subject promissory note was entered after its purchase of assets from Bob Capes in November 2008. As noted above,

Plaintiff presently proceeds only under a merger theory. Under these circumstances, the court declines to dismiss the second cause of action as it relates to CBUR.

## V.     Arguments Not Dependent on Nature of November 2008 Transaction

CBUR raises two additional arguments which could be made equally as to one or both of the other Defendants. The court does not find the facts or law so clear as to support dismissal on either of these grounds.

**Proper Defendants to ERISA Claim**. CBUR argues that the Plan is the *only* proper Defendant as to the claim for benefits under the Plan. Dkt. No. 12-2 at 6-8. Assuming this argument is correct, it would support dismissal of both CBUR and Bob Capes as to the ERISA claim. Thus, this argument would afford CBUR a complete defense as to the ERISA claim even if the November 2008 transaction was a merger or if some other (as-yet-unpleaded) successor liability theory supported imposition of liability on CBUR for *Bob Capes'* obligations.

CBUR acknowledges, nonetheless, that "the Fourth Circuit has not decided the issue" and that at least one unpublished Fourth Circuit decision suggests the court would allow a suit to recover benefits to proceed against Plan fiduciaries. Dkt. No. 12-1 at 9 *see also* Dkt. No. 25 at 9 (acknowledging on reply that "[t]he only case that has actually addressed the issue" of whether a plan sponsor/administrator was a proper defendant in an action for benefits under an insolvent top hat plan "appears to beg the issue"). Further, as Plaintiff notes, a reasonable argument may be made that a Plan Sponsor is at least a proper defendant, if not the most appropriate defendant, with respect to a claim for benefits under a top hat plan given the unfunded nature of such a plan. Dkt. No. 22 at 6-8. Given the lack of controlling authority, the court declines to resolve this novel issue at the motion to dismiss stage.

**Novation.** Finally, CBUR argues that Plaintiff has received all benefits due by virtue of her acceptance of a promissory note from Bob Capes. Dkt. No. 12-2 at 14-15. CBUR maintains that Plaintiff's consideration for the note was, necessarily, relinquishment of her interest under the Plan. Thus, CBUR argues that Plaintiff's acceptance of the promissory note from Bob Capes worked a novation of her rights under the Plan.

The complaint states only that Plaintiff exchanged "valuable consideration" for the promissory note. While CBUR's assumption as to the nature of the consideration seems plausible, the court cannot discern from the complaint whether the consideration was, as CBUR posits, a *complete release* of all rights under the top hat plan, a conditional release, or no release at all. Thus, the court cannot resolve this issue on motion to dismiss for failure to state a claim.

## CONCLUSION

For the reasons set forth above, Defendant CBUR's motion to dismiss is denied. The court will, however, limit Plaintiff to her merger-based theory of liability absent clarification of her theory by filing of an amended complaint**.**

IT IS SO ORDERED.

S/ Cameron McGowan Currie<br>CAMERON MCGOWAN CURRIE<br>UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 29, 2011